MaUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY MICHAEL ZERBST,

       Plaintiff,                  CIVIL ACTION NO. 14-cv-10754

       v.                          DISTRICT JUDGE MARIANNE O. BATTANI

COMMISSIONER OF              MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Jeffrey Michael Zerbst seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 13) and Defendant's Motion for Summary Judgment (docket no. 14).  Plaintiff also filed a response to Defendant's motion.  (Docket no. 15.)  The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.      **RECOMMENDATION**

      For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 13) should be GRANTED IN PART and DENIED IN PART, and Defendant's Motion for Summary Judgment (docket no. 14) should be DENIED.  This matter should be remanded for a proper assessment of Dr. Kelwala's opinion.

## II.    PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income with a protective filing date of September 30, 2011, alleging disability beginning July 1, 2007, due to torn and stretched tendons and constant pain in both shoulders, a detached tendon in his right shoulder, numbness and tingling in both arms and hands, and insomnia. (*See* TR 19, 139.)  The Social Security Administration denied Plaintiff's claims on November 7, 2011, and Plaintiff requested a *de novo* hearing.  (TR 19.)  On September 25, 2012, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Martha M. Gasparovich.  (TR 19, 29.)  In a November 13, 2012 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy.  (TR 19-29.)  The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

### A.    Plaintiff's Testimony

Plaintiff summarized his hearing testimony as follows:

At the time Plaintiff stopped working in 2007, he was self-employed working in auto body repair and painting, and he had to stop working due to injuries in his shoulders. T 38-39. This pain started in 2005, and progressively became worse to the point where he was unable to keep his business going. T 39. He lost his home and was living in his building where his business was, and then he was locked out of that building and lost hope at that point. T 39. He lived on the street for a couple of months, but his family found him and brought him back to his mother's place where he has been living ever since. T 39. He felt a lot of shame, and did not want anyone to know what happened to him. T 40.

He still has issues in both shoulders and numbness in his fingers and both hands. T 40. He used to see Dr. Mendelson, but Dr. Mendelson will no longer see him without insurance. T 42. Since 2006 and 2007, his anxiety has progressed, and

> he now has difficulty going outside of his own home. T 40. If he goes out alone, he has extreme anxiety and panic. T 40. He has a girlfriend with whom he has a child, and he started dating her prior to the escalation of his anxiety. T 40. He has difficulty sitting for prolonged periods because he gets fidgety. T 42.
>
> He cannot lift very much, but he can hold his infant child if he is sitting. T 43. Someone has to place his child in his lap because his shoulder will pinch and he has numbness in his fingers, and he does not wish to risk endangering his child. T 43. He cannot do menial things because of the numbness and tingling in his arms, hands and fingers. T 47-48. He has difficulty brushing his teeth, washing his hair, and getting dressed. T 48. He has days where he does not get dressed at all, and he only showers weekly. T 51.
>
> During the day he mainly stays in his room because he does not like to deal with anything or anybody. T 44. He does not sleep well at night because numbness and tingling in his arms wakes him up at night, and his medication makes him sleep periodically throughout the day as it makes him "extremely drowsy." T 44. Wellbutrin turns him into a "zombie," and Xanax "knocks [him] out cold." T 49. He does not walk the dog because he does not like to get too far from his house. T 44. He tried to go to the grocery store by himself, but halfway through the trip he felt like he could not breathe; but he can go with his mother or girlfriend because he feels like they provide a buffer. T 45.

(Docket no. 13 at 14-15.) The undersigned has reviewed the hearing transcript and will cite to it as necessary throughout this Report and Recommendation.

### B. Vocational Expert's Testimony

First, the vocational expert (VE) defined Plaintiff's past work in auto body repair as skilled at the medium exertional level. (TR 53.) The ALJ then asked the VE whether a hypothetical person of the same age, education, and work experience as Plaintiff who could stand or walk no more than six hours in an eight-hour day; would need a sit/stand option at will; could lift no more than twenty pounds occasionally and ten pounds frequently; would be unable to push or pull with the upper extremities; could only squat, crawl, kneel, climb, balance, bend, or stoop occasionally; and could not perform forceful gripping or twisting with the right upper extremity could perform any of Plaintiff's past work. (TR 54.) The VE responded that such an individual could not perform

3

Plaintiff's past work and that were no transferable job skills. (TR 54.) The VE testified, however, that the individual could perform work as an inspector, for which there were 12,000 available jobs in southeast Michigan, double that amount in the entire state, and as a small products assembler, for which there were 6,000 jobs available in southeast Michigan and double that amount in the state. (TR 54.)

Next, the ALJ asked the VE whether the individual's ability to perform those jobs would be affected if he were limited to simple, routine tasks in a low-stress environment defined as no quick decision-making and no quick judgment required on the job, and he could have no interaction with the public and only occasional interaction with co-workers. (TR 54-55.) The VE answered in the negative. (TR 55.) The ALJ asked whether the individual's ability to perform the listed jobs would be affected if all work had to be simple, routine tasks in a non-production pace setting as a result of some level of chronic pain. (TR 55.) The VE again responded in the negative. (TR 55.)

The ALJ also asked whether the individual's ability to perform the listed jobs would be affected if he were off task twenty percent of the workday due to anxiety and depression. (TR 55.) The VE responded that the listed jobs would be precluded, and there would be no other jobs that such an individual could perform. (TR 55.) Lastly, the ALJ asked whether the individual's ability to perform the listed jobs would be affected if he needed to take unscheduled breaks at least once a day for a period of at least 30 to 45 minutes. (TR 55.) The VE answered in the affirmative and testified that competitive work would be precluded. (TR 55.)

    **C.**    **Medical Record**

Plaintiff (docket no. 13 at 9-14), Defendant (docket no. 14 at 4-11), and the ALJ (TR 24-27) each set out a factual background related to Plaintiff's medical record. There are no significant inconsistencies between the three accounts; thus, the Court will incorporate them by reference

herein. The undersigned has, however, conducted an independent review of Plaintiff's medical record and will include comments and citations as necessary throughout this Report and Recommendation.

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 1, 2007, and that Plaintiff suffered from the following severe impairments: past history of intramedullary rodding femur; past history of subscapularis tear, right shoulder with impingement; olecranon bursitis; lateral epicondylitis; right linear tear distal aspect of subscapular tendon; cervical spondylosis; and major depression. (TR 21.) The ALJ also found, however, that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 22-23.) The ALJ then found that Plaintiff had the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift twenty pounds occasionally and ten pounds frequently. He is unable to push or pull with the upper extremities. He could only crawl occasionally. He cannot perform forceful gripping or twisting with the right upper extremity. He is limited to simple routine tasks and would need a low stress work environment defined as no quick decision making and no quick judgments required on the job. He cannot have interaction with the public and only occasional interaction with coworkers. He would be limited to a non-production setting as a result, of some level of chronic pain.

(TR 23-27.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 27-28.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from July 1, 2007, through the date of the ALJ's decision. (TR 28.)

## V.      LAW AND ANALYSIS

### A.     Standard of Review

5

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

>  (1) Plaintiff was not presently engaged in substantial gainful employment; and
>
>  (2) Plaintiff suffered from a severe impairment; and
>
>  (3) the impairment met or was medically equal to a "listed impairment;" or
>
>  (4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the

pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four because 1) "the ALJ erroneously discounted the opinion from treating psychiatrist Dr. Kelwala;" 2) "[t]he ALJ should have ordered a consultative examination to obtain an opinion surrounding Plaintiff's physical limitations;" 3) "the ALJ erred in analyzing the required factors when assessing Plaintiff's credibility;" and 4) "the ALJ asked the vocational expert an incomplete hypothetical question." (Docket no. 13 at 7.)

### 1.     *The ALJ's Assessment of Dr. Kelwala's Opinion*

It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-

11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R.§§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir.2009)).

In determining Plaintiff's RFC, the ALJ discussed the August 8, 2012 opinion of Plainitff's treating psychiatrist, Dr. Surendra Kelwala, M.D.:

9

> In August 2012, Dr. Kelwala indicated that despite medication, the claimant had symptoms of depression with GAF scores from 50 to 65. The claimant indicated that his symptoms resulted in significant social isolation, concentration and short-term memory loss. As [a] result of the claimant's symptoms such as, appetite disturbance, feelings of guilt, persistent mood swings, motor tension, fear of all social interaction, he could not perform work activity. Dr. Kelwala opined that the claimant was unable to meet competitive standards to maintain attention, to work with others, to perform work at a consistent pace and to complete a normal workday. In addition, the claimant would miss more than four days per month due to his symptoms (Exhibit 5F).

(TR 26.) The ALJ then found that Dr. Kelwala's opinion was not consistent with his own treatment notes. (TR 26.) Plaintiff argues that the ALJ's rationale for discounting Dr. Kelwala's opinion does not provide good reason for her determination. (Docket no. 13 at 17.) The undersigned agrees. Notably, the ALJ's finding does not sufficiently specify how much weight, if any, the ALJ assigned to Dr. Kelwala's opinion. Moreover, the ALJ does not adequately explain how Dr. Kelwala's opinion is inconsistent with his treatment notes.

First, immediately after reasoning that Dr. Kelwala's opinion was inconsistent with his treatment notes, the ALJ stated: "Dr. Kelwala indicated in the medical source statement that the claimant received treatment once or twice a month since October 2011. However the claimant did not have a psychiatric evaluation until February 2012, which was after the date last insured." Defendant contends that the ALJ made this statement "to highlight Dr. Kelwala's inaccurate representation that Plaintiff had been receiving treatment twice monthly since October 2011" . . . "to demonstrate that the doctor's opinion was not consistent with his own treatment notes." (Docket no. 14 at 17-18.) Defendant's contention sounds in speculation, as she has not demonstrated how she knows what the ALJ was thinking when she made that statement. If Defendant is correct, however, the ALJ's position is also speculative. Neither Defendant nor the ALJ point to any record evidence probative of their position that Dr. Kelwala misrepresented the date that he began treating

10

Plaintiff in his opinion. This feigned inconsistency is not a good reason for discounting Dr. Kelwala's opinion.

Second, the ALJ found that Plaintiff's GAF scores of 50-65 rendered by Dr. Kelwala on August 8, 2012 suggested that Plaintiff's medication was providing some benefit to Plaintiff and that Plaintiff's symptoms were improving. (TR 26.) As Plaintiff asserts and Defendant concedes, however, the ALJ misread these scores in Dr. Kelwala's opinion. In fact, Dr. Kelwala opined that Plaintiff's current GAF score was "45-50," with his highest GAF score in the past year being 50. (TR 206.) Additionally, the GAF scores in Dr. Kelwala's opinion are consistent with the GAF score of 45 that he assigned to Plaintiff on April 26, 2012. (TR 202-04.) Defendant contends that the ALJ's oversight in this instance does not constitute reversible error. (Docket no. 14 at 16.) While the ALJ's misinterpretation of Dr. Kelwala's opinion regarding Plaintiff's GAF scores, alone, may not constitute reversible error, this misinterpretation viewed in combination with no indication of what weight, if any, the ALJ assigned to Dr. Kelwala's opinion, no valid explanation of how Dr. Kelwala's opinion is inconsistent with his treatment notes, and no further consideration of the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6), warrants remand of this matter for a proper assessment of Dr. Kelwala's opinion.

*2. Whether the ALJ Should Have Ordered a Consultative Examination*

Plaintiff asserts that the ALJ erred in assigning significant weight to the clinical findings and opinion of his treating orthopedist, Dr. Jeffrey D. Mendelson, M.D., because they were rendered prior to the alleged onset date and argues that the ALJ should have ordered an updated physical consultative examination. (Docket no. 13 at 23-24.) Under the regulations, if a claimant's medical sources cannot or will not submit sufficient medical evidence about a claimant's impairment for the

11

Commissioner to make a decision about disability, the Commissioner may ask the claimant to have one or more physical or mental examinations or tests. 20 C.F.R. §§ 404.1517, 416.917; *see also* 20 C.F.R. §§ 404.1512(e), 416.912(e). The ALJ is not required to refer a claimant to a consultative examiner but "has the discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citations omitted). "The burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)).

According to the record, Plaintiff treated with Dr. Mendelson for shoulder and arm pain from April 6, 2005 to August 30, 2006 (TR 190-95), with Dr. Marc Helzer, M.D. of the Medical Clinic of Northville on December 15, 2011 for left shoulder pain and neck stiffness (TR 226-27), and again with Dr. Helzer on July 11, 2012 for bilateral hand numbness (TR 223-24). Plaintiff was reportedly still treating with Dr. Helzer at the time of the administrative hearing. (TR 41-42.) The only record that contains any opinion regarding Plaintiff's functional physical limitations is from Dr. Mendelson on March 30, 2006, in which he opines that Plaintiff could perform "[f]ull activities." (TR 194.) The ALJ discussed the record evidence regarding Plaintiff's physical impairments and found that the absence of treatment between 2006 and 2011 suggested that Plaintiff's pain had improved. (TR 25.) The ALJ also found that the fact that Plaintiff did not immediately return to Dr. Helzer for treatment of his shoulder and neck pain after his December 2011 appointment suggested that the prescribed medications were successful in treating his pain. (TR 25.) Additionally, the ALJ noted that there was no evidence that Plaintiff sought emergency room treatment for pain. (TR 25.) Essentially, the ALJ reasonably equated a lack of treatment with a lack of symptoms. The ALJ then

stated that even though Plaintiff received only intermittent treatment for his physical pain, she accounted for Plaintiff's limitations in the RFC based on his medical records and testimony. (TR 25.)

Plaintiff was represented by counsel at the administrative hearing, and his attorney did not indicate that the record was incomplete or request a consultative physical examination at that time. (*See* TR 35-56). Moreover, Plaintiff does not challenge the ALJ's assessment of his physical RFC or identify what additional limitations should have been included in the RFC. Plaintiff simply does not set forth a compelling argument regarding the need for a consultative examination in this matter. The undersigned finds that the ALJ did not abuse her discretion by not ordering a consultive physical examination and recommends that Plaintiff's Motion be denied with regard to this issue. Seeing, however, that the undersigned has recommended remand of this matter for other reasons, the ALJ may order a consultative physical examination of Plaintiff upon remand, at her discretion.

### 3. The ALJ's Assessment of Plaintiff's Credibility

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of

13

an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors). While the ALJ should consider the factors listed above, "he is not required to significantly analyze any of them." *Ahee v. Comm'r of Soc. Sec.*, No. 07-CV-12071, 2008 WL 4377652, at *3 (E.D. Mich. Sept. 22, 2008) (citation omitted). Plaintiff asserts that the ALJ failed to properly consider these factors in assessing Plaintiff's credibility. (Docket no. 13 at 24-26.)

Here, the ALJ set forth a brief summary of Plaintiff's statements in his function report and his hearing testimony and then concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the RFC assessment. (TR 24.) In making this finding, the ALJ reasoned that Plaintiff's allegations were not supported by the medical evidence. (TR 24.) She noted that Plaintiff did not seek treatment for his physical impairments from 2006 to 2011, that Plaintiff did not receive

emergency room treatment for his pain, and that Plaintiff did not immediately return to Dr. Helzer for treatment after his December 2011 appointment, which suggested that the medication Dr. Helzer prescribed was successful in treating Plaintiff's pain. (TR 25.) The ALJ also noted that Plaintiff was advised to participate in physical therapy, but he declined. (TR 25.) The ALJ pointed out that, according to the record evidence, Plaintiff did not report having symptoms or treatment for depression until after the date last insured. (TR 26, 27.) The ALJ also discussed the medications that Plaintiff was taking for his depression and anxiety and noted that, in spite of their side effects, Plaintiff continued to take them and reported some improvement as a result. (TR 26.)

While the ALJ's credibility determination could have been more developed in terms of Plaintiff's daily activities and the inconsistencies of Plaintiff's statements in his October 2011 function report as compared to his hearing testimony and his complaints to Dr. Kelwala, remand on this basis is not warranted. The ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that she gave to Plaintiff's statements and the reasons for that weight. The undersigned finds that the ALJ's credibility assessment is supported by substantial evidence in the record and should not be disturbed.

### 4. The ALJ's Hypothetical Questions to the VE

Plaintiff argues that the ALJ asked the VE incomplete hypothetical questions because they did not accurately describe his abilities and limitations. (Docket no. 13 at 26-27 (citing *Hicks v. Comm'r of Soc. Sec.*, No. 10-13643, 2011 WL 6000701, at *6 (E.D. Mich. Nov. 28, 2011) (Roberts, J.) (adopting report and recommendation)).) In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record, and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The Sixth Circuit has held that hypothetical questions to experts are not required to include

15

lists of claimant's medical impairments. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Here, the ALJ presented all of the limitations of the RFC in her hypothetical questions to the VE, and the VE testified that such an individual would not be capable of performing Plaintiff's prior work, but that there were jobs available for a person with these limitations, which the VE cited in detail. The ALJ properly relied on the VE's testimony to find that there are significant numbers of jobs available which Plaintiff can perform. Nevertheless, additional vocational expert testimony may be required, depending on the conclusions the ALJ reaches on remand regarding Plaintiff's RFC.

## VI.    CONCLUSION

For the reasons stated herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment (docket no. 13) be GRANTED IN PART and DENIED IN PART, Defendant's Motion for Summary Judgment (docket no. 14) be DENIED, and this matter be remanded for a proper assessment of Dr. Kelwala's opinion.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991);

16

*Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

      Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: February 20, 2015         s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE


### PROOF OF SERVICE

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 20, 2015         s/ Lisa C. Bartlett
                                     Case Manager